## ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, *Plaintiff in Error,* v. W. L. PEEPLES, *Defendant in Error.*

1. Section 2871, of the General Statutes of 1906, provides that the fences and stock guards required by the statute shall be maintained by the companies, person or persons owning or operating railroads, and kept in good repair, so that they shall at all times be suitable and sufficient to prevent the intrusion of any cattle, horses, hogs or other domestic live stock upon the tracks of such railroad. And section 2869 provides that a railroad company shall provide proper stock guards and crossings; and when these provisions are not complied with and cattle intrude upon a railroad track because of such omission, the railroad company is liable to the owner for their value.

2. Where a road bridge over a railroad track has been burnt and the railroad company has made another crossing over its track, but has not provided any approach to the crossing the road overseer whose cattle have been killed near the crossing on the track by the engines and cars of the railroad is not shown to be guilty of contributory negligence because he cut the wires of the railroad fence in order that the public might have an approach to the crossing when it is shown that the fence was out of repair in several places near the scene of the killing of the cattle, and it is not shown that they went on the track where the wire was cut by the overseer.

3. Where it is not clear that a question was calculated to elicit mere conclusions of a witness, and the testimony in response was proper and not objected to in any way, no reversible error is shown in permitting the question to be asked.

4. Where a question was propounded to the defendant's witness, tending to elicit his opinion of the value of cattle killed by a railroad company, which question was not permitted on objection of the plaintiff, but it appears from the evidence that the defendant did afterwards obtain from the witness a substantial answer to the question, no reversible error is shown.

5. Charges given by the court are to be considered as a whole, and where the charges thus considered state substantially the provisions of our statutes in regard to the killing of cattle by railroads, there is no reversible error shown.

6. In an action by a plaintiff against a railroad company for the value of cattle alleged to have been killed by the latter, and a plea of contributory negligence is filed by the defendant company, the burden of proof to establish such a plea by a preponderance of the evidence is upon such defendant company.

This case was decided by Division B.

Writ of Error to the Circuit Court for Hamilton County.

The facts in the case are stated in the opinion of the court.

*Doggett & Smith* and *M. F. Horne,* for Plaintiff in Error.

*Roberson, Small & Stephens,* for Defendant in Error.

HOCKER, J.: The defendant in error sued the plaintiff in error, herein described respectively as plaintiff and defendant in the Circuit Court of Hamilton County, for damages for the killing of six head of cattle near a station called Marion. The declaration alleges that the defendant's railroad at the place where the cattle were killed was not fenced and furnished with stock guards erected and maintained thereon sufficient to prevent the intrusion of domestic stock upon said railroad track, and that the place where the cattle were killed was not within the limits of any incorporated city or town and not within one mile of any incorporated city or town

having ten thousand inhabitants or upwards. The decla-
ration is based on our statute, sections 2868-9-70-71 72
73-74-75 General Statutes of 1906, and alleges the giv-
ing of the proper notice, &c., and claims $400.00 double
damages and an attorney's fee, with costs. Pleas of
not guilty and contributory negligence were filed and
issues joined on them.

On the trial the evidence tended to prove that the
cattle were killed on the railroad track, by being run over
by the cars of the defendant near a place where the rail-
road track crossed a road with an overhead bridge across
the railroad track; that though the railroad had fenced the
track the fence was in poor condition and not sufficient
to prevent the intrusion of animals thereon; that the
cattle killed were milk cows with a Jersey strain of
blood, and were worth from thirty-five to forty dollars
a head; that the statutory notice of the claim was given
the defendant fixing the value of the cows at $200.00,
which the defendant refused to pay. The defendant
undertook to show contributory negligence of the plain-
tiff in this, that some four or five weeks before the cattle
were killed the overhead bridge was burned, and that
the plaintiff who was the road overseer, had requested a
temporary crossing to be made by the defendant near
the bridge so that the public might be able to use the
road; that a temporary crossing was made by the defend-
ant; that the defendant did not cut the wires on either
side thereof, and that plaintiff, who was the road over-
seer, had ordered the wires cut, which was done, and
that plaintiff, in order that the crossing might be reach-
ed and used had received permission from a Mr. Sandlin
whose pasture abutted on the railroad at the place where
the crossing had been made, to cut his wires and open
his pasture so that the crossing might be reached, and
that this was permitted by Mr. Sandlin, and was done by

the plaintiff or by his order.   As this opened up an approach to the railroad track it is contended it was contributory negligence on the part of the plaintiff.   The plaintiff's testimony and that of some of his witnesses tends to show that the fence was a very poor one, and in many other places insufficient to prevent the intrusion of animals upon the track.   There is no proof locating the place where the cattle got upon the railroad right of way, though they were killed not far from the temporary crossing.

Among other defects in the fence the plaintiff testified that when the bridge was burned, in attempting to extinguish the fire the railroad fence was disconnected from the abutment of the bridge, leaving a space of four or five feet wide open to the track, and that this had not been repaired when the cattle were killed, and that this was not very far from where the cattle were killed.

The judge charged the substance of the statute law applicable to the case, *viz*, sections 2869 *et seq*. General Statutes of 1906, *supra*.   The jury rendered a verdict for the plaintiff for $200.00 damages and the court gave double damages under the statute, and an attorney's fee of $100.00, and gave judgment for the plaintiff for $500. A writ of error was taken to review this judgment.

The first assignment treated in the brief of defendant is based on the ruling of the court overruling the objection to the following question propounded to the plaintiff, Peeples, *viz*:   "State whether or not Mr. Peeples, if these cattle were above the ordinary cattle."   This was objected to as seeking to elicit the conclusion of the witness and not the facts.   The answer to that question was:   "My occupation is farming.   I raise stock and the cows that were killed I raised with the exception of one, and I am acquainted with the value of cattle in the community where these cattle were killed.   They

were of an improved stock, and were from one-half to three-quarters Jersey, and were giving milk at the time they were killed."

It is not clear that the question was intended to elicit the mere conclusions of the witness, and it is not contended that the evidence given in response thereto is objectionable. The testimony given seems to be proper. We do not think reversible error is shown.

The next assignment presented is based on the action of the trial court in sustaining an objection to the following question propounded to J. M. Allen, the defendant's witness, *viz*: "Taking into consideration all that you know of other cattle, are you acquainted with the market value of the cattle that were killed on that occasion?" Mr. Allen was the section foreman of the defendant. He had testified that he saw the cattle the morning after they were killed; that he had made settlements with everybody who had had cattle killed, except the plaintiff, for about three years; that he didn't know but supposed he was in a position to say that he was acquainted with the value of such cattle as the cattle of Mr. Peeples which were killed. Then the above question was propounded. After the objection to it was sustained he was asked the following questions: "Mr. Allen, are you acquainted with the value of cattle at or near or in the community where Mr. Peeples' cattle were killed?" He answered "No I only made report of them and the company would settle for them." Q. "Making reports of them or making settlement for them as you have testified, have you become acquainted with the value of cattle?" He answered: "No further than I have told you, that I made report. I never bought any cattle or sold any, either." Q. "Are you acquainted with the value of such cattle as Mr. Peeples had killed?" A. "Yes as far as that goes, I can answer what has been paid for such cattle." Q.

"I will ask you what was the value of the cattle that Mr. Peeples had killed on that occasion?" This question was objected to and the objection sustained. This ruling is also made the basis of an assignment of error. Then the following questions were asked: Q. "Mr. Allen, did you know the actual value of the cattle that Mr. Peeples had killed down there?" A. "Yes sir. I know what I reported them at." Q. "Now what was the actual value of the cattle Mr. Peeples had killed on that occasion?" This question was objected to and the objection sustained, which ruling is the basis of another assignment of error. The testimony of the witness then goes on in narrative form to state that he discussed the value of the cattle with Mr. Peeples, disagreed with him as to the value, and that he reported them at $32.50 each, and that it was his duty to make report of the value of cattle killed on his section.

It will be seen that the witness did not pretend to know the market value of the cattle of the plaintiff which were killed, though he had an idea of their value formed by his making settlements for others which had been killed. It furthermore appears that the defendant had the benefit of the witness' valuation of these cattle, which was $32.50 each. We find no reversible error under these assignments.

The next assignment of error to be considered is based on a portion of the judge's charge to the jury, which is as follows: "Then it provides that any railroad, person or persons operating a line of railroad in this State that shall not erect and maintain fences along both sides of the railroad track so as to prevent the intrusion of cattle, horses, hogs or other domestic animals shall be liable for the full cash value or damage to such stock, which may be killed or injured by any train, engine or cars upon the track of said railroad." The contention

here is "that by this charge the jury were led to believe that if the company's track was not so fenced as to prevent the intrusion of live stock and that live stock went upon the track and were killed, the company was liable therefor, even though there was no connection between the failure to properly fence and the going of the cattle upon the track  *  *  * even though the cattle went upon the track through an opening in the fence cut by the plaintiff himself." It is also contended that the charge was hazy and indefinite, containing several separate propositions of law which should have stated separately and was calculated to mislead the jury.

The charge of the court contains substantially the statute law on the subject (sections 2868, 2869, 2870, and 2871 .Gen. Stats. of 1906.) The concluding portions thereof is as follows: "If you find that the railroad company did have its track fenced as provided by law, then you should find for the defendant. If you find that the defendant killed the cattle in question, but that they were killed on account of the plaintiff having cut the defendant's fence, then you should find for the defendant." The defendant asked for no instructions, and the portion of the charge to which objection is made was almost a literal statement of the statute.

Section 2871, General Statutes of 1906, provides that the fences and stock guards required in this Chapter shall be kept in good repair, and maintained by the companies, person or persons owning or operating the said railroads, so that they shall at all times be suitable and sufficient to prevent the intrusion of any cattle, horses, hogs or other domestic live stock upon the track of such railroad, &c. There was abundant proof that the cattle might have gone on the track without going through the place cut in the fence at the temporary crossing. The burden of proof was on the defendant under its plea of

contributory negligence, and this we think it failed to establish by a preponderance of the evidence. Furthermore, under section 2869 a railroad is required to provide proper stock guards and crossings. There is no pretence that the defendant provided a proper crossing or had stock guards at the point where the cattle were killed, though it was near a public road crossing. We see no objection to that portion of the charge which is excepted to

The only other assignment of error urged in the defendant's brief is based on the motion for a new trial which was overruled, and challenges the verdict as contrary to the evidence because the undisputed evidence shows that the plaintiff cut the defendant's fence at or near where the cattle were killed, and the plaintiff did not show that the cattle went on the right of way at a point other than where he cut the fence. The circumstances under which the plaintiff cut the wire fence have been referred to. He was the road overseer. After the overhead bridge was burnt the plaintiff requested the defendant to provide a temporary crossing, until the bridge could be repaired. The company made a crossing near the burnt bridge but provided no way to get to it. It did not cut its wires so as to afford an approach to the crossing. It was the duty of the defendant to provide a crossing and to repair the breaks in the fence at the bridge. It did neither. Moreover, as before stated, the plaintiff's evidence shows that the fence, in many places, was not sufficient to prevent the intrusion of cattle on its right of way and track. We do not think that the cutting of the wire fence by the plaintiff can under the circumstances be regarded as contributory negligence. It was the duty of the defendant to provide a proper fence and crossing and to safeguard the approaches to the crossing so that cattle could not intrude on the track. Sufficient time had elapsed

from the time the bridge was burnt for this to have been done. If this had been done and the plaintiff had then cut the wire a different question would be presented.

We find no reversible error in the record, and the judgment below is affirmed.

TAYLOR and PARKILL, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL, and WHITFIELD, JJ., concur in the opinion.